GOTHARD, Judge.
This is an appeal of a trial court decision which rendered judgment in a suit on a note in favor of plaintiff. Defendant appeals. For the following reasons, we affirm.
FACTS
On July 13, 1989, Slammer’s Burgers and Seafood To Go, Inc. (Slammer’s), through its director of operations, Thomas W. Sugg, Jr., contracted with appellee S & S Cash Register and Computer Company, Inc. (S & S) to purchase a TEC FF 500 computer system to be used in a Slammer’s fast food restaurant *257 under construction in Baton Rouge, Louisiana. The total purchase price was $17,799.10 and the contract provided for training, installation and cabling, which would be billed at the end of the job. Slammer’s president is appellant Joe Caldarera (Caldarera). On June 20, 1990, pursuant to LSA-R.S. 9:5351, et seq., Caldarera executed a chattel mortgage on the computer system and signed a promissory note, secured by the chattel mortgage, in favor of S & S for $4,791.96, representing the $4,040.59 balance on the computer system plus fees and finance charges.[1] In conjunction with the chattel mortgage and promissory note, Caldarera also executed a notice of security interest which was filed with the Secretary of State. The promissory note provided for Caldarera to pay twelve monthly installments of $399.38 each, beginning on August 20, 1990 and ending on July 20, 1991. Problems developed with the installation and operation of the computer system, however, and Caldarera refused to make any payments on the note.
On September 4, 1990, S & S filed a petition “in suit on promissory note and for recognition of chattel mortgage” against Cal-darera, both individually and D/B/A Slammer’s, and on open account against Slammer’s in the 19th Judicial District Court for the Parish of Baton Rouge. On February 19, 1991, S & S filed suit against Caldarera individually on the promissory note in the 40th Judicial District Court for the Parish of St. John the Baptist (Caldarera’s domicile), which is the subject of this appeal.[2]
In Caldarera’s answer to the St. John suit, Slammer’s intervened as a plaintiff against S & S, alleging misrepresentations and/or defects in the computer system constituted a failure of cause and consideration for the contract, or alternatively that S & S’s inac-tions constituted a breach of the contract, causing damages to Slammer’s. On August 23, 1991, we granted supervisory writs, dismissing Slammer’s intervention. Caldarera then filed a third party demand against Slammer’s, reiterating the claims in his answer that he signed the chattel mortgage, promissory note and notice of security interest only in his capacity as the president of Slammer’s, and seeking indemnity from Slammer’s for any amount that Caldarera may be cast as a result of the suit on the note. In its answer to Caldarera’s third party demand, Slammer’s cross-claimed S & S, asserting essentially the same allegations against S & S as in Slammer’s failed intervention. On August 7, 1992, the trial court granted S & S’s declinatory exception of lis pendens and/or motion to strike, dismissing Slammer’s cross-claim. Slammer’s remained in the suit as a third party defendant.
On December 1, 1992, a one-day bench trial on the merits was held. At the conclusion of trial, the trial court rendered judgment in favor of S & S and against Caldarera in the amount of $4,064.59, together with legal interest from the date of judicial demand, 25% contractual attorney’s fees and for all costs.[3] From this judgment, Calda-rera filed a suspensive appeal, asserting two assignments of error: 1) that the trial court committed manifest error in finding that the defendant failed to meet its burden of proving that there was a failure of consideration for the contract; and 2) that the court committed legal error in refusing to allow the defendant to put on evidence with regard to whether or not the note was signed in a representative capacity. S & S answered the *258 appeal, alleging the appeal is frivolous and seeking damages.
FAILURE OF CONSIDERATION
It is weE settled in Louisiana jurisprudence that
when a plaintiff introduces in evidence the negotiable instrument sued on (legaUy presumed to have been given for value received) he is not required in the first instance to produce any further proof of consideration, notwithstanding that the defendant has specifically pleaded a want thereof. The defendant, thereupon, has the burden of going forward with the evidence and rebutting the prima facie case (in favor of plaintiff) thus made out. (citations omitted) But if the defendant offers evidence which overcomes the prima facie case, that is, easts doubt upon the reality of the consideration, the ultimate burden of proving consideration, by evidence that preponderates, is on the plaintiff, (citations omitted)
Moss v. Robinson, 216 La. 295, 43 So.2d 613 (1949).
In the case before us, neither party contested the validity of the promissory note. Therefore, S & S is entitled to the presumption that the instrument was given for value received. Id.; Williamson v. Guice, 613 So.2d 797, 800 (La.App. 4th Cir.1993), writ denied 617 So.2d 937 (La.1993). However, the presumption is rebutted if the defendant “casts doubt” upon the consideration. Once the defendant casts doubt upon the consideration, the burden shifts to the plaintiff to prove consideration existed by a preponderance of the evidence. Moss, supra; Williamson, supra; Community Bank v. Motel Management Corp., 558 So.2d 641, 644 (La.App. 1st Cir.1990); and the cases cited therein.
In defense of this suit on the note, Calda-rera asserts there was a failure of consideration for the note due to defects in the computer system and/or misrepresentations of S & S. At trial, Linda Andry, the manager of the Baton Rouge Slammer’s, testified that she experienced several, serious problems with the computer system. Counsel for Caldarera also introduced into evidence two service bulletins from TEC (the manufacturer of the computer system), dated before the installation of the computer system at Slammer’s, which purported to describe some of the same problems with the computer system that Ms. Andry testified she experienced while managing Slammer’s. It is apparent that enough doubt was cast to shift the burden onto S & S to prove by a preponderance of the evidence that consideration for the note existed.
To meet its burden, S & S offered the testimony of Mr. Charles Broome, the service manager for S & S who instaUed the computer system, trained Slammer’s employees on its use, monitored its implementation and responded to caEs when problems and/or questions arose. His testimony conflicted with that of Ms. Andry. Whüe he admitted that Slammer’s employees had some problems with the computer system initiaEy, he regarded the problems as unfamüiarity with the new system rather than defects in the system. He testified that he was able to remedy aü of the problems or questions Slammer’s employees had with the computer system, except that on a few occasions, problems were related to him which he could not duphcate and which did not occur whüe he was present. In an attempt to remedy these problems, Mr. Broome testified that he contacted the hospitahty (systems) manager for TEC in Atlanta, Georgia. He then caEed the TEC office in Chicago, Illinois. FinaEy, he contacted the TEC programming and training school in Torrance, California. None of the TEC employees with whom Mr. Broome conversed were able to confirm or explain these problems, which apparently only Slammer’s employees had experienced.
Mr. Broome testified that although the two TEC service bulletins introduced by Calda-rera were dated prior to the computer system’s instaEation, he had no knowledge of their existence before the institution of the Etigation. Mr. Broome also testified that he regularly requested and received service bulletins from TEC, and prior to its instaEation at Slammer’s, Mr. Broome contacted TEC to confirm that the computer system had the most current software and ROM set.
*259 In rendering judgment in favor of S & S, thereby finding consideration for the note existed, it is apparent that the trial court gave greater weight to the testimony of Mr. Broome. Pursuant to Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993), in order to reverse a factfinder’s determination,
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. (citations omitted) Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Viewing the record in its entirety, we find that the trial court was not manifestly erroneous and that S & S met its burden of proving by a preponderance of the evidence that consideration for the note existed.
FAILURE TO ALLOW EVIDENCE OF SIGNATURE IN REPRESENTATIVE CAPACITY
At trial, Caldarera was prevented from offering any evidence that he signed the promissory note in his representative capacity on behalf of Slammer’s (the owner of the computer system) and did not intend to bind himself personally. LSA-R.S. 10:3-403 provides in pertinent part:
(2) An authorized representative who signs his own name to an instrument
(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.[4]
Since the promissory note neither named Slammer’s nor showed Caldarera signed in a representative capacity, the trial court did not err in refusing to hear evidence that Caldarera signed the note in his representative capacity.
DAMAGES FOR A FRIVOLOUS APPEAL
Pursuant to LSA-Code Civ.Proc. art. 2133, S & S answered this appeal, asserting that it is frivolous, interposed strictly for delay, and an award of damages should be made as a result. Pursuant to LSA-Code Civ.Proc. art. 2164, an appellate court may award damages for a frivolous appeal. However, as we stated in Davis v. Davis, 606 So.2d 575, 577 (La.App. 5th Cir.1992), “such damages are awarded ... only when it clearly appears that the appeal was taken solely for the purpose of delay or that counsel for appellant does not seriously believe in his legal position!” (citations omitted). After a thorough review of the record, we do not find that either of these criteria exist. Accordingly, we deny S & S’s-request for damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant.

AFFIRMED.

*260
REHEARING DENIED.

The court was fully cognizant of exhibit D-4 in reaching its decision. However, notwithstanding that evidence, the record did not support a finding that the trial court judgment, which held that there was valid consideration for the sale, was manifestly erroneous.

. Since the chattel mortgage and promissory note were executed after January 1, 1990, the provisions of Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.), as enacted by Acts 1988, No. 528, govern this security interest along with R.S. 9:5351, et seq., which remain in effect.

. The demand on the promissory note against Caldarera was dismissed from the Baton Rouge suit, necessitating the St. John suit. The remainder of the Baton Rouge suit, claims against Slammer’s on an open account (covering the training, installation and cabling charges), is apparently still pending.

.The $4,064.59 represents the unpaid balance on the computer system ($4,040.59) plus $24.00 in filing and recording fees of the chattel mortgage and promissory note. After judgment was orally rendered at the conclusion of the trial, counsel for S & S consented to having interest set on the principal amount ($4,064.59) at the rate of legal interest from the date of judicial demand (as opposed to the 18% annual percentage rate provided for in the promissory note).

. R.S. 10:3-403 has been amended and reenacted as LSA-R.S. 10:3-402; however, it does not become effective until January 1, 1994.